## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BLAKEY,

      Petitioner,

      v.

MICHAEL WENEROWICZ,

      Respondent.

CIVIL ACTION NO. 3:13-cv-00575

(CAPUTO, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

On February 25, 2013, the Court received and filed a *pro se* petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and mailed by the petitioner, Michael Blakey, on February 19, 2013. (Doc. 1). At the time, Blakey was incarcerated at SCI Graterford, located in Montgomery County, Pennsylvania. Blakey was later granted to leave to file an amended petition, which was signed and mailed to the Court by Blakey on April 22, 2014. (Doc. 18).

I.   STATEMENT OF THE CASE

A. Procedural History

On October 29, 2008, following a jury trial, Blakey was convicted of first-degree murder and sentenced to life in prison. *Commonwealth v. Blakey*, Docket No. CP-35-CR-0000982-2008 (Lackawanna County C.C.P.).

His conviction and sentence were affirmed on direct appeal by the Superior Court of Pennsylvania on May 26, 2010. *Commonwealth v. Blakey*, 4 A.3d 206 (Pa. Super. Ct. 2010) (table decision). (*See also* Doc. 33–10).

Blakey filed a *pro se* PCRA petition in the Court of Common Pleas on or about December 7, 2010, which he subsequently withdrew on or about March 31, 2011. *Commonwealth v. Blakey*, Docket No. CP-35-CR-0000982-2008 (Lackawanna County C.C.P.). He filed a second PCRA petition in the Court of Common Pleas on May 24, 2011, which was denied on September 9, 2011. *Id.* The denial of his PCRA petition was affirmed on appeal by the Superior Court of Pennsylvania on July 10, 2012. *Commonwealth v. Blakey*, 55 A.3d 130 (Pa. Super. Ct. 2012) (table decision). (*See also* Doc. 33–13). He petitioned the Supreme Court of Pennsylvania for allocatur, which was denied on February 5, 2013. *Commonwealth v. Blakey*, 63 A.3d 772 (Pa. 2013) (table decision).

Blakey filed his original federal habeas petition with the United States District Court for the Eastern District of Pennsylvania on February 19, 2013.[1] (Doc. 1). Because it challenged a conviction and sentence

---

[1] The petition was received and docketed by our sister court on February 25, 2013, but it appears to have been deposited in the prison
*(continued on next page)*

imposed by a state court within this judicial district, Blakey's petition was transferred to this Court pursuant to 28 U.S.C. § 2241(d) on February 27, 2013. (Doc. 2).

On March 7, 2013, the Court received and filed Blakey's first motion for stay and abeyance of the petition to permit him to exhaust certain federal habeas claims that he had not yet presented to the state courts. (Doc. 6). On April 3, 2013, the Court denied Blakey's first motion to stay on the ground that his original petition contained only exhausted claims, the purportedly unexhausted claims having been omitted from it. (Doc. 13). That same day, the Court also issued a *Miller/Mason* notice and order to the petitioner, advising him of the effect of his pleadings under the restrictions imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and providing him with the opportunity to elect to proceed with his petition as filed, or withdraw it and file an all-inclusive § 2254 petition within the AEDPA's one-year statutory limitations period. (Doc. 14). *See generally Mason v. Meyers*, 208 F.3d 414, 417–19 (3d Cir. 2000); *United States v. Miller*, 197 F.3d 644, 649–52 (3d Cir. 1999).

---

mail system on February 19, 2013, and thus effectively filed that day. *See* Rule 3(d), 28 U.S.C. foll. § 2254.

On May 1, 2014, the Court received and docketed a completed *Miller/Mason* election form from Blakey, in which he indicated that he wished to withdraw his original petition and file another, all-inclusive petition. (Doc. 17). Along with the election form, Blakey submitted an amended petition that included his purportedly unexhausted claims along with those he had previously asserted in his original petition. (Doc. 18). Both documents were signed and mailed on April 22, 2014, and thus effectively filed that day. (Doc. 17; Doc. 18). *See* Rule 3(d), 28 U.S.C. foll. § 2254. On May 5, 2014, the Court issued a show-cause order directing the respondent to file an answer to the amended petition. (Doc. 19).

On May 7, 2014, the Court received and docketed a renewed motion by Blakey for stay and abeyance of the petition to permit him to exhaust federal habeas claims that he had not yet presented to the state courts. (Doc. 21). On May 14, 2014, the Court entered an order staying the respondent's obligation to file an answer to the petition until Blakey's motion to stay the entire proceeding was resolved. (Doc. 26). On August 13, 2015, the Court denied Blakey's renewed motion for a stay as moot, noting that the purportedly unexhausted claims newly raised in the amended petition were in fact procedurally defaulted, and thus the petition was not

a "mixed" petition for which stay and abeyance were appropriate. *Blakey v. Wenerowicz*, Civil Action No. 3:13-cv-00575, 2015 WL 4876830 (M.D. Pa. Aug. 13, 2015) (Doc. 31).

On August 31, 2015, the respondent filed his answer to the petition. (Doc. 33; *see also* Doc. 34). On September 16, 2015, Blakey filed a motion for leave to amend his habeas petition to state that his fifth claim was based on the Fifth and Fourteenth Amendments to the United States Constitution,[2] and on November 3, 2015, the Court granted the petitioner's motion. (Doc. 37; Doc. 38). On November 39, 2015, Blakey filed a reply to the respondent's answer. (Doc. 39).

## B. Habeas Claims Presented

Liberally construed, *see generally Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013) (discussing a court's obligation to liberally construe *pro se* pleadings and other submissions, particularly when dealing with imprisoned *pro se* litigants), the *pro se* petition has asserted that Blakey is entitled to relief under 28 U.S.C. § 2254 for the following reasons:

---

[2] As originally filed, the amended petition referenced the Sixth Amendment as the basis of this claim.

(1)  Blakey was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to file a timely motion *in limine* to exclude the testimony of prosecution expert witness Dr. Wayne Ross on the ground that his expert opinion testimony lacked the necessary factual foundation;

(2)  Blakey was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to investigate and present testimony by various medical doctors who were involved in emergency medical treatment of the victim;

(3)  Blakey was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to object to the testimony of Dr. Ross regarding the cause of the victim's injuries on the ground that his expert opinion testimony lacked the necessary factual foundation;

(4)  Blakey was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to object to the testimony of Dr. Ross regarding the timing of the

victim's injuries on the ground that his expert opinion testimony lacked the necessary factual foundation;

(5) Blakey's conviction for first-degree murder was based on insufficient evidence as a matter of law because the evidence did not establish the timing of the victim's injuries beyond a reasonable doubt, nor did it establish beyond a reasonable doubt that Blakey had exclusive custody of the victim at the time of the victim's fatal injuries;

(6) Blakey was denied effective assistance of counsel in trial proceedings because his court-appointed trial counsel failed to request a jury instruction regarding conflicting expert opinion testimony;

(7) Blakey was denied a fair trial by prosecutorial misconduct because the prosecution made various improper remarks during closing arguments;

(8) Blakey was denied a fair trial by prosecutorial misconduct because the prosecution knowingly introduced purportedly false expert opinion testimony by Dr. Ross; and

(9) Blakey was denied a fair trial by prosecutorial misconduct because the prosecution knowingly introduced purportedly false fact testimony regarding the timing and content of a telephone call between Blakey and a friend, Robert Schultz, on the evening of the victim's fatal injuries.

Blakey raised claims (5) and (7) in his direct appeal to the Superior Court, which denied these claims on the merits. He raised claims (2), (3), and (4) in his PCRA appeal to the Superior Court, which denied these claims on the merits. He has raised claims (1), (6), (8), and (9) for the first time in the instant federal habeas petition.

## II.   DISCUSSION

### A. Timeliness and Relation Back

Blakey raised claims (1), (6), (8), and (9) for the first time in his amended petition, constructively filed on April 22, 2014. None of these four claims was included in his original petition. The respondent contends that these four claims are time-barred because they were first presented to this Court after expiration of the one-year federal habeas limitations period and they do not "relate back" to the original, timely filed petition.

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA") established a one-year statute of limitations for the filing of federal habeas corpus petitions pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). The statute also prescribes how the one-year limitation period is calculated, including the date on which the limitation period begins, *id.* § 2244(d)(1), and the circumstances under which the limitation period may be tolled, *id.* § 2244(d)(2).

Under the AEDPA, a state prisoner generally must file any federal habeas corpus petition within one year of the date that his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). Where a prisoner does not pursue direct review of his conviction all the way to the Supreme Court of the United States, his conviction becomes final when the time for pursuing direct review in that Court, or at any level of state court, expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012). Here, the Superior Court of Pennsylvania affirmed Blakey's conviction and sentence on May 26, 2010. Because Blakey did not file a petition for allocatur in the Supreme Court of Pennsylvania, his conviction became final thirty days later on June 25, 2010. *See* Pa. R. App. P. 1113(a)(1) (permitting 30 days after entry of a Superior Court order to file a petition for allocatur).

In addition, a person in state custody may toll the running of the AEDPA's limitation period during the time in "which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). On May 25, 2011, Blakey filed a *pro se* PCRA petition in the Court of Common Pleas, 334 days after his conviction became final. When Blakey's PCRA petition was denied by the Court of Common Pleas, he appealed to the Superior Court. When the Superior Court dismissed his PCRA appeal, Blakey petitioned the Supreme Court of Pennsylvania for allocatur. On February 5, 2013, the Supreme Court of Pennsylvania denied allocatur and the limitation began to run once again for an additional period of 31 days (one year less 334 days), ending on March 8, 2013. *See generally Lawrence v. Florida*, 549 U.S. 327, 332 (2007); *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 85 n.5 (3d Cir. 2013).[3]

---

[3] In addition to a period of statutory tolling, a habeas petitioner may be entitled to equitable tolling of the statute of limitations. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). But Blakey has failed to allege, much less demonstrate, any facts that might support equitable tolling of the limitations period. *See generally id.* at 649 ("[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing.") (quoting *Pace v. DiGuglielmo*, 544 U.S. 408,

*(continued on next page)*

Blakey constructively filed his original petition on February 19, 2013, within the one-year federal limitation period. His amended petition, however, was constructively filed on April 22, 2014, more than a year after the AEDPA limitations period expired.

But, as the Third Circuit has observed:

> Under Federal Rule of Civil Procedure 15(c)(1)(B), a party may properly raise a new claim or defense that would have been barred by the statute of limitations if the claim or defense "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

*Hodge v. United States*, 554 F.3d 372, 377 (3d Cir. 2009) (quoting Fed. R. Civ. P. 15(c)(1)(B)). *See generally* Fed. R. Civ. P. 81(a)(4) (applying Federal Rules of Civil Procedure to habeas proceedings); R. 12, 28 U.S.C. foll. § 2254 (same); *Singletary v. Pa. Dep't of Corrs.*, 266 F.3d 186, 193 (3d Cir. 2001) ("Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed [petition]."). In the habeas context, the Supreme Court of the United States has held that the term "conduct, transaction, or occurrence" in this rule means that "[s]o long as the original and amended petitions state

---

418 (2005)).

claims that are tied to *a common core of operative facts*, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (emphasis added); *see also Hodge*, 554 F.3d at 378 (quoting *Mayle*). A newly added claim does not relate back to a timely filed habeas petition merely because it concerns the same "trial, conviction, or sentence." *Mayle*, 545 U.S. at 664. Relation back is allowed "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id.* at 657.

In claim (1), asserted for the first time in his amended petition, Blakey has asserted an ineffective assistance of counsel claim based on his trial counsel's failure to file a timely motion *in limine* to exclude Dr. Ross's expert testimony in general on the ground that it lacked the necessary factual foundation to be admissible. In his timely filed claims (3) and (4), Blakey asserted ineffective assistance of counsel claims based on his trial counsel's failure to object to Dr. Ross's expert testimony on the cause and timing of the victim's injuries on the ground that it lacked the necessary factual foundation to be admissible. All three claims concern the same allegedly inadmissible evidence and trial counsel's failure to challenge its

admissibility. Because all three claims are tied to a common core of operative facts, claim (1) relates back to Blakey's original, timely filed habeas petition. *See Mayle*, 545 U.S. at 664 n.7; *Hodge*, 554 F.3d at 378.

In claim (6), asserted for the first time in his amended petition, Blakey has asserted an ineffective assistance of counsel claim based on his trial counsel's failure to request that the jury be instructed on how it should evaluate conflicting expert opinion testimony.[4] Blakey's original federal habeas petition asserted claims regarding the alleged insufficiency of the evidence against him, the alleged inadequacy of trial counsel in conducting pretrial investigation and in failing to object to the admission of expert opinion testimony by Dr. Ross, and the alleged misconduct of the prosecutor in presenting the Commonwealth's closing argument. None of Blakey's original claims concerned any error at the jury instruction phase of the trial proceedings. Because these claims are not "tied to a common core of operative facts," claim (6) does not relate back to those alleged in Blakey's original petition, and thus it is barred under the federal habeas statute of limitations. *See United States v. Massara*, 174 Fed. App'x 703,

---

[4] Nowhere in his papers does Blakey set forth the instruction he believes the jury should have received.

707 n.3 (3d Cir. 2006); *see also Mayle*, 545 U.S. at 664; *Hodge*, 554 F.3d at 378.

In claim (8), asserted for the first time in his amended petition, Blakey has asserted a due process claim based on the prosecution's presentation of Dr. Ross as an expert witness. Blakey contends this constituted prosecutorial misconduct which deprived him of a fair trial because the prosecution knew or should have known that Dr. Ross's expert opinion testimony was "false." As noted above, in his timely filed claims (3) and (4), Blakey asserted ineffective assistance of counsel claims based on his trial counsel's failure to object to Dr. Ross's expert testimony on the ground that it lacked the necessary factual foundation to be admissible. The facts undergirding Blakey's prosecutorial misconduct claim differ in neither type nor time from those supporting his timely filed ineffective-assistance claims: all concern whether Dr. Ross's expert opinion testimony regarding the cause and timing of the victim's injuries lacked the requisite factual foundation to be admissible at trial. Because all three claims are tied to a common core of operative facts, claim (8) relates back to Blakey's original, timely filed habeas petition. *See Mayle*, 545 U.S. at 664 n.7; *Hodge*, 554 F.3d at 378.

In claim (9), asserted for the first time in his amended petition, Blakey has asserted a due process claim based on the prosecution's presentation of two fact witnesses—Detective Vince Uher, the investigating police officer, and Robert Schultz, a friend of the petitioner—with respect to the timing and content of a telephone call between Blakey and Schultz. Blakey contends this constituted prosecutorial misconduct which deprived him of a fair trial because the prosecution knew or should have known that the fact testimony of these two witnesses was "false." As noted above, Blakey's original federal habeas petition asserted claims regarding the alleged insufficiency of the evidence against him, the alleged inadequacy of trial counsel in conducting pretrial investigation and in failing to object to the admission of expert opinion testimony by Dr. Ross, and the alleged misconduct of the prosecutor in presenting the Commonwealth's closing argument. None of Blakey's original claims concerned the testimony of either Uher or Schultz. Because these claims are not "tied to a common core of operative facts," claim (9) does not relate back to those alleged in Blakey's original petition, and thus it is barred under the federal habeas statute of limitations. *See Massara*, 174 Fed. App'x at 707 n.3; *see also Mayle*, 545 U.S. at 664; *Hodge*, 554 F.3d at 378.

Accordingly, it is recommended that the petition be denied as untimely filed with respect to Blakey's claims (6) and (9), both of which were added by amendment after expiration of the limitations period.[5]

## B. Exhaustion and Procedural Default

Blakey's claims (1) and (8) are asserted for the first time in the instant federal habeas petition. They were not previously presented to the state courts on direct appeal or on post-conviction collateral review.

Generally, for this Court to address the merits of a habeas petition, all of the claims contained in the petition must be exhausted. 28 U.S.C. § 2254(b). Ordinarily, "[t]he exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ."). "'Fair presentation' of a claim means that the petitioner 'must present a federal

---

[5] In the alternative, claims (6) and (9) are procedurally defaulted and habeas relief may be denied for the same reasons as those set forth below with respect to claims (1) and (8).

claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway*, 355 F.3d at 714 (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A federal claim may be exhausted by presenting it either on direct appeal or in post-conviction PCRA proceedings. *See O'Sullivan*, 526 U.S. at 844 (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)). In Pennsylvania, a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction or on appeal from a PCRA court's denial of post-conviction relief. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, Order No. 218, 30 Pa. Bull. 2582 (Pa. May 9, 2000); Pa. R. App. P. 1114 historical notes (Order of May 9, 2000).

Here, it is undisputed that Blakey failed to present either of these claims to the state appellate courts on direct appeal or in his PCRA appeal. Nevertheless, if these claims were to be dismissed without prejudice for failure to exhaust, and Blakey were to return to state court now to attempt to exhaust them in a PCRA petition, his PCRA petition would be untimely and the matter would be dismissed by the state court pursuant to 42 Pa.

Cons. Stat. Ann. § 9545(b). *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001). Under this state statute, a PCRA petition must be filed "within one year of the date the judgment becomes final," subject to certain enumerated exceptions not applicable here. *See* 42 Pa. Cons. Stat. Ann. § 9545(b). "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless*, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)(1)(B)(i)); *see also Coleman v. Thompson*, 501 U.S. 722, 732 (1991) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Thus, for the purpose of this federal habeas petition, Blakey's claims (1) and (8) are technically exhausted. *See Hurlburt v. Lawler*, Civil No. 1:CV-03-0665, 2008 WL 2973049, at *12 (M.D. Pa. Aug. 4, 2008).

"Even so, this does not mean that a federal court may, without more, proceed to the merits. Rather, claims deemed exhausted because of a state procedural bar are procedurally defaulted . . . ." *Lines v. Larkins*, 208 F.3d

153, 160 (3d Cir. 2000). Generally, a federal court will not review a claim that is procedurally defaulted. *Johnson v. Folino*, 705 F.3d 117, 127 (3d Cir. 2013). A claim is procedurally defaulted when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman*, 501 U.S. at 750. The one-year statute of limitations applicable to state PCRA proceedings has been held to be such an independent and adequate state procedural rule. *See Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014); *Banks v. Horn*, 49 F. Supp. 2d 400, 403–07 (M.D. Pa. 1999). *See generally Bronshtein v. Horn*, 404 F.3d 700, 708–10 (3d Cir. 2005) (discussing history and strict application of the PCRA statute of limitations since 1999).

Notwithstanding procedural default, a federal court may review a habeas claim where the petitioner can demonstrate cause for the default and actual prejudice as a result, or that failure to review the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *McCandless*, 172 F.3d at 260. It is the petitioner's burden to demonstrate circumstances excusing procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. To demonstrate "cause" for a procedural default, the

petitioner must show that "some objective factor external to the [petitioner's] defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, to demonstrate "actual prejudice," the petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *Mutope v. Folino*, No. Civ. 3:CV-04-2053, 2005 WL 3132315, at *3 (M.D. Pa. Nov. 22, 2005)). Alternatively, to show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("'[A]ctual innocence means factual innocence, not mere legal insufficiency."); *Schlup v. Delo*, 513 U.S. 298, 327 (1995) ("[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").

### 1. Claim (1): Ineffective Assistance of Counsel

In his amended petition and his reply and supporting brief, Blakey concedes that claim (1), in which he asserts an ineffective assistance of counsel claim, is procedurally defaulted, but he contends that it may be considered by this Court on the merits because his court-appointed PCRA counsel was ineffective for failing to advance this claims in PCRA proceedings, which constitutes "cause" excusing the procedural default.[6]

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the Supreme Court of the United States recognized that, under certain circumstances, the procedural default of an ineffective assistance of counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel in post-conviction collateral proceedings. *See Martinez*, 132 S. Ct. at 1315–21. Specifically, the *Martinez* Court held that:

> [A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320.

---

[6] Blakey has produced no new evidence that he is actually innocent of the crime for which he has been convicted.

The *Martinez* Court explicitly limited its holding to cases where state procedural law provided that "claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding"—that is, in states like Arizona, where state procedural law explicitly prohibited the adjudication of ineffective assistance claims on direct appeal. *Id.* Shortly thereafter, the Supreme Court revisited its *Martinez* holding, extending it to apply not only to cases where state procedural law expressly prohibited ineffective assistance claims on direct appeal, but where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). The Third Circuit has subsequently examined Pennsylvania procedural law and found that *Martinez* applies in Pennsylvania. *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

Under *Martinez*, the failure of a federal habeas petitioner's counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute "cause" if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under *Strickland v.*

*Washington*, 466 U.S. 668, 687 (1984); and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one," meaning that "the claim has some merit." *Martinez*, 132 S. Ct. at 1319; *see also Glenn*, 743 F.3d at 410. "Under *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).

Here, it is clear that the underlying ineffective assistance of trial counsel claim is meritless, and thus PCRA counsel's failure to advance that claim cannot constitute cause to excuse procedural default. In initial-review and appellate PCRA proceedings, Blakey contended that trial counsel was ineffective for failing to object to Dr. Ross's expert opinion testimony on admissibility grounds. Underlying both that claim, asserting ineffective assistance based on trial counsel's failure to object to Dr. Ross's testimony on admissibility grounds, and this claim, asserting ineffective assistance based on trial counsel's failure to move *in limine* to exclude Dr. Ross's testimony on the very same grounds, is the issue of whether Dr. Ross's testimony was indeed admissible evidence. In affirming the denial

of PCRA relief, the Superior Court considered the underlying evidentiary issue in extensive detail, finding sufficient facts in the record to provide a foundation for Dr. Ross's expert opinion. (Doc. 33-13, at 4–7). Trial counsel's failure to file the desired motion *in limine* was not unreasonable because Dr. Ross's expert opinion testimony was admissible under state rules of evidence, as the Superior Court ultimately found on PCRA appeal. *See generally Estelle v. McGuire*, 502 U.S. 62, 67–68 (("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008) ("Admissibility of evidence is a state law issue."). Because the underlying ineffective-assistance claim is meritless (or insubstantial), PCRA counsel's failure to advance the underlying claim in initial-review PCRA proceedings does not constitute cause that might excuse Blakey's procedural default of this claim. *See Martinez*, 132 S. Ct. at 1319; *see also Glenn*, 743 F.3d at 410.

Accordingly, it is recommended that the petition be denied as procedurally defaulted with respect to Blakey's claim (1).

### 2. Claim (8): Prosecutorial Misconduct

In his amended petition and his reply, Blakey concedes that claim

(8), in which he asserts a prosecutorial misconduct claim, is procedurally defaulted, but he contends that it may be considered by this Court on the merits because his court-appointed appellate counsel was ineffective for failing to advance this claims on direct appeal,[7] which constitutes "cause" excusing the procedural default.

In claim (8), Blakey contends that he was denied a fair trial, in violation of the Fourteenth Amendment's Due Process Clause, because the prosecution knowingly introduced purportedly false expert opinion testimony by Dr. Ross. Blakey contends that Dr. Ross's testimony was "false" because it lacked the necessary factual foundation to be admissible. In essence, this is just a different theory of relief based on the very same evidentiary issue at the heart of claim (1)—as well as several other of the claims Blakey has asserted in his amended petition. As discussed in the

---

[7] He contends that PCRA counsel was ineffective as well for failing to advance the underlying ineffective assistance of appellate counsel claim. But under *Martinez*, defective performance by PCRA counsel may only constitute cause excusing procedural default of a Sixth Amendment ineffective assistance claim, which is ordinarily not amenable to review on direct appeal, effectively making initial-review PCRA proceedings "a prisoner's 'one and only appeal' as to an ineffective-assistance claim." *See Martinez*, 132 S. Ct. at 1315. With respect to other categories of federal habeas claims, deficient performance by PCRA counsel may not constitute cause excusing procedural default. *See Coleman*, 501 U.S. at 755.

preceding section, the Superior Court considered the underlying evidentiary issue and explicitly found that Dr. Ross's expert opinion testimony had an adequate factual foundation and thus was admissible under state rules of evidence. *See generally Estelle*, 502 U.S. at 67–68; *Wilson*, 533 F.3d at 213. Because the underlying prosecutorial misconduct claim—premised on the lack of factual foundation for Dr. Ross's expert opinion testimony—is meritless, appellate counsel was not ineffective for failing to raise it on direct appeal, and thus Blakey has failed to demonstrate cause to excuse his procedural default of this claim. *See Williams v. Beard*, 637 F.3d 195, 207 (3d Cir. 2011); *Box v. Petsock*, 697 F. Supp. 821, 833 (M.D. Pa. 1987).

Accordingly, it is recommended that the petition be denied as procedurally defaulted with respect to Blakey's claim (8).

### C. Claims Decided on the Merits

Blakey's remaining habeas claims—Claims (2), (3), (4), (5), and (7)—were each denied on the merits by the Superior Court of Pennsylvania.

A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d). In drafting this statute, Congress "plainly sought to
ensure a level of 'deference to the determinations of state courts,' provided
those determinations did not conflict with federal law or apply federal law
in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see
also Eley v. Erickson*, 712 F.3d 837, 846 (3d. Cir. 2013). Consequently,
"state-court judgments must be upheld unless, after the closest
examination of the state-court judgment, a federal court is firmly
convinced that a federal constitutional right has been violated." *Williams*,
529 U.S. at 387. "A federal habeas court may not issue the writ simply
because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law
erroneously or incorrectly. Rather, that application must also be
[objectively] unreasonable." *Id.* at 411; *see also Eley*, 712 F.3d at 846.
Moreover, any factual findings by the state trial and appellate courts are
presumed to be correct, and the petitioner bears the burden of rebutting

that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); *Eley*, 712 F.3d at 846.

### 1. Ineffective Assistance Claims

In claims (2), (3), and (4), Blakey claims that he was denied the effective assistance of counsel at trial. In affirming the PCRA court's denial of PCRA relief, the Superior Court rejected these claims on their merits, applying the three-pronged Pennsylvania standard for judging ineffectiveness claims set forth in *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009), which the Third Circuit and this Court have previously found to be substantively identical to the two-pronged federal ineffectiveness standard enunciated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Boyd v. Waymart*, 579 F.3d 330, 334 n.2 (3d Cir. 2009); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Showers v. Beard*, 586 F. Supp. 2d 310, 321–22 (M.D. Pa. 2008); *see also Chestnut v. Pa. State Attorney Gen.*, Civil Action No. 3:CV-12-0579, 2012 WL 6622713, at *9 & n.4 (M.D. Pa. 2012) (discussing *Cox*). Accordingly, this Court may not grant relief unless it determines that the state appellate court's decision on the merits was an unreasonable application of *Strickland*, or that it was based on

"unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel." *Showers*, 586 F. Supp. 2d at 322.

Under *Strickland*, a habeas petitioner is required to establish two elements to state a successful claim for ineffective assistance of counsel: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The *Strickland* test is conjunctive and a habeas petition must establish both the deficient performance prong as well as the prejudice prong. *See id.* at 687; *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010). But, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. *Id.* at 687–89. This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2001) (quoting *Strickland*, 466 U.S. at 687). When a federal habeas petitioner

advances an ineffective assistance of counsel claim that a state court has already rejected on its merits, he is faced with "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Under this "doubly deferential" standard, the Court must "give[] both the state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13. Indeed, a federal habeas court is "required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011)) (alterations omitted).

With respect to the prejudice prong of the *Strickland* test, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### a. Claim (2): Failure to Call Other Doctors as Witnesses

The Superior Court considered Blakey's ineffectiveness claim with respect to trial counsel's failure to investigate and present the testimony of other doctors who had provided medical treatment to the victim after he

was injured. The appellate court denied this claim on its merits, finding that trial counsel's failure to call these doctors as witnesses was not unreasonable under the facts of this case and that Blakey failed to satisfy the "performance" prong of the ineffective assistance standard. The state court provided the following explanation of its reasoning:

> [Blakey's] position is that the [three Hershey Medical Center] doctors used the word "fracture" rather than the term "fractures" when referencing the decedent's injuries in their reports. He contends the use of the singular form reveals there was only one fracture in the decedent's skull. He further contends that offering evidence of a single fracture would have weakened the prosecution against him by undermining the Commonwealth's theory that the decedent suffered multiple fractures.

> At the PCRA hearing, trial counsel indicated that [Blakey's] own expert, Dr. Jonathan Arden, had essentially advised counsel that a skull fracture cannot jump over a suture line in the skull. Thus, Arden indicated that any findings of skull fracture extending across suture lines (*i.e.*, from one region/bone of the skull to another) indicated multiple fractures. Indeed, Dr. Arden's own trial testimony revealed that he, likewise, believed the decedent had more than one fracture.

> To the extent the Hershey doctors did use the term "fracture," their reports essentially indicated that the decedent's skull fracture extended across regions/bones— that is, that there were fractures in multiple regions/bones. In doing so, the doctors' findings effectively supported the Commonwealth's contention regarding the number of fractures.

> The PCRA court accepted counsel's testimony

regarding Arden's evaluation of the information in the Hershey doctors' reports. [Blakey] has offered us no persuasive reason to disturb the court's finding. Thus, [Blakey] has not shown arguable merit to the claim that counsel should have called the aforesaid doctors to testify to establish the decedent sustained but one fracture. *A fortiori*, he has not shown the court should have found trial counsel was ineffective as [Blakey] contends.

[Blakey] also seems to raise a similar argument that counsel should have called Dr. John Falcone to testify for [Blakey]. Falcone was the emergency room physician who attended to the decedent at CMC, the location where the decedent was treated before being transferred to the Hershey Medical Center. More specifically, [Blakey] asserts that calling Falcone as a defense witness would have established that the decedent suffered only one skull fracture and/or that no fracture was observed at CMC. [Blakey's] argument fails.

Falcone's trial testimony [as a prosecution witness] made plain that, having observed swelling and a large bleed in the brain window of the decedent's CT scan, Falcone's responsibility was to transfer the child as quickly as possible to a facility (Hershey Medical Center) where he could be treated by a pediatric neurosurgeon. Falcone explained that he had minutes or hours to get the child to a surgeon or the child would die. He further indicated that, given his aforesaid observations and his need to transfer the child immediately, he had no reason to move beyond the brain segment of the CT scan and look to the skull segment.

Moreover, when cross examined by [Blakey], Falcone acknowledged the CT scan report authored by a CMC radiologist stated that no fracture was seen. Additionally, Falcone appeared to indicate on cross that the CMC chart did not mention a skull fracture. Thus, Falcone did provide some testimony that could have been taken to

suggest the absence of fractures. [Blakey] points to no record evidence that Falcone could or would have provided any more extensive testimony on this point had he been called on defense-direct.

In sum, Falcone's trial testimony established he was not at all focused on assessing the presence of skull fractures. His cross examination elicited at least some testimony that conceivably weakened the Commonwealth's contention about multiple fractures, but [Blakey] has not shown that calling Falcone as a defense witness would have produced any additional [defendant]-favorable testimony. Accordingly, [Blakey] has not shown arguable merit to the claim that trial counsel should have called Falcone on direct examination. . . .

(Doc. 33-13, at 12–14). Based on the record before the Superior Court, there is nothing to suggest that the Superior Court applied *Strickland* to the facts of this claim in an objectively unreasonable manner, nor is there anything to suggest an unreasonable determination of the facts by the state court. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner.").

Accordingly, it is recommended that the petition be denied on the merits with respect to Blakey's claim (2).

> b. *Claim (3): Failure to Object to Dr. Ross's Testimony Regarding the Cause of the Victim's Injuries*

The Superior Court considered Blakey's ineffectiveness claim with

respect to trial counsel's failure to object to the testimony of Dr. Ross regarding the cause of the victim's injuries. The appellate court denied this claim on its merits, finding that trial counsel's failure to object to Dr. Ross's expert opinion testimony with respect to the cause of the victim's injuries was not unreasonable under the facts of this case and that Blakey failed to satisfy the "performance" prong of the ineffective assistance standard. The state court provided the following explanation of its reasoning:

> [Blakey] argues his trial counsel was ineffective for not objecting to an opinion offered by the Commonwealth's expert, Dr. Wayne Ross. Ross was the pathologist who conducted the autopsy on the decedent. More particularly, [Blakey] claims Ross's opinion as to the mechanism of the fatal injuries—*i.e.*, that they were caused by the decedent's head repeatedly hitting a floor in the residence where the incident occurred—lacked a factual basis.
>
> An expert may offer an opinion once the factual basis thereof is established on the record. During his testimony, Ross testified to numerous facts leading to his conclusion that multiple impacts on the floor constituted the mechanism of the injury. He explained that he performed the autopsy in this matter and, while doing so, observed swelling and multiple bruises on the decedent's head. Ross found eight distinct skull fractures and testified to the length of some of them. Ross also made clear that the fractures were in different parts of the skull and that the number, nature and locations of those fractures revealed that there had been multiple impact

sites. He explained that, conservatively, there were six such sites, but he also suggested that there may have been up to nine based on the overall damage he found to the decedent's head and brain.

The autopsy revealed bleeding in the decedent's retinae and spinal cord. Similarly, there were hemorrhages and other damage inside the decedent's brain. In fact, there were diffuse injuries throughout his whole brain, not just one injury limited to a focal point.

Ross's testimony to the foregoing facts was based on what he saw during the autopsy itself as well as what he learned from microscopic slides obtained from that autopsy. In large measure, the slides allowed him to assess the blood and other cells taken from the decedent. In turn, assessing the cells revealed enabled him to detect and/or confirm the presence of extensive injuries throughout the decedent's brain.

As part of his testimony as to what he found regarding the decedent's injuries, Ross commented on various photographs taken during the autopsy. The Commonwealth displayed these photographs for the jurors' view and introduced them into evidence while Ross provided explanatory testimony.

Based on all the foregoing evidence—particularly the fractures and diffuse brain injuries—Ross concluded that the decedent's head travelled at significant speed and stopped quickly by impacting a surface. More specifically, he stated:

> This head is moving through time and space and it's abruptly stopping. That's how you get the diffuse brain injuries throughout the brain, and the only way that's going to happen is if this head is impacting on a surface.

He also remarked:

> I considered the fact that somebody could
> have like stepped on this child's head or
> something like that, I considered that. But
> when you do that, if you step on a child's head
> or something like that, to step on it without
> any energy, just to kind of push on it, that
> would get you what's most likely a focal
> injury. It wouldn't be throughout the whole
> brain, what we call a diffuse injury. So we
> had a diffuse injury so I know from that alone
> that there is significant speed to this head as
> it impacts something.

Ross then went on to explain that he had reviewed
pictures of the incident scene. The pictures revealed a
bed, a rug, one or more walls, and a floor that Ross
believed was concrete with tile covering. He testified to
his understanding that there was no damage to the walls
and, as such, he ruled out the walls as being the
surface(s) impacted by the decedent's head. Having seen
the photo of the floor, and having considered the
decedent's injuries, Ross concluded the floor was the
impact surface. He stated, "And it's my opinion that the
head was taken and it was impacted upon the floor at
high speed multiple times."

In light of our foregoing discussion, we find the record
contained sufficient facts supporting Ross's opinion
concerning the mechanism of injury. [Blakey's] claim to
the contrary is simply wrong. Thus, he has not shown
arguable merit to the underlying claim that trial counsel
should have objected to Ross's opinion. . . .

(Doc. 33-13, at 4–7 (citations and ellipses omitted)). Based on the record

before the Superior Court, there is nothing to suggest that the Superior

Court applied *Strickland* to the facts of this claim in an objectively unreasonable manner, nor is there anything to suggest an unreasonable determination of the facts by the state court. *See Woodford*, 537 U.S. at 25.

Accordingly, it is recommended that the petition be denied on the merits with respect to Blakey's claim (3).

### c. Claim (4): Failure to Object to Dr. Ross's Testimony Regarding the Timing of the Victim's Injuries

The Superior Court considered Blakey's ineffectiveness claim with respect to trial counsel's failure to object to the testimony of Dr. Ross regarding the timing of the victim's injuries. The appellate court denied this claim on its merits, finding that trial counsel's failure to object to Dr. Ross's expert opinion testimony with respect to the timing of the victim's injuries was not unreasonable under the facts of this case and that Blakey failed to satisfy the "performance" prong of the ineffective assistance standard. The state court provided the following explanation of its reasoning:

> [Blakey] also maintains trial counsel should have objected when the Commonwealth asked Ross whether the decedent's injuries were consistent with having occurred between 8:30 p.m. to 10:30 p.m. on the date in question. In this regard, he argues the Commonwealth's question to Ross was essentially a hypothetical question without a factual basis. He is complaining about the

Commonwealth's selection of the aforesaid timeframe. As we will explain, the record contains sufficient facts to render the question proper.

We first reiterate that an expert may offer an opinion as long as there are sufficient facts of record to support that opinion. While an expert may not guess or answer a question based on conjecture, the expert may nonetheless opine in response to a hypothetical question. More specifically, an expert may do so based on assumed facts that are eventually supported by evidence and reasonable inferences therefrom.

Testimony established that, by roughly 8:00 p.m. on the date of the incident, the decedent was in a residence with Danielle Washington. Shortly after 8:30 p.m., [Blakey] arrived.

At some point, Washington was holding the decedent while he fell asleep. She took him to a bedroom and tried to lay him on a bed, but he awoke and began crying. She picked him up and went to a living room. Later, he fell asleep again. Washington once more took him to the bedroom and tried again to lay him down. The decedent awoke and cried. [Blakey], who was present in the bedroom, told Washington to leave the decedent on the bed. Washington did so and left the room. It appears only [Blakey] and the decedent remained in the bedroom.

Washington then began a telephone conversation lasting from a few minutes past 9:00 p.m. until 10:45 p.m. Toward the end of that conversation, [Blakey] exited the aforesaid bedroom and departed the residence.

After [Blakey] departed, Washington checked on the decedent several times and eventually found he was gasping and unconscious. Washington carried the decedent to a neighbor's apartment and had the neighbor call 911. Police and other emergency personnel responded

and found the decedent to be breathing but limp. Emergency personnel then took him to Community Medical Center ("CMC"). He was later transferred to Hershey Medical Center.

The foregoing facts and reasonable inferences therefrom supported the notion that the decedent was in [Blakey's] presence from roughly 8:30 p.m. to 10:30 p.m. and was alone with [Blakey] in the bedroom from approximately 9:00 p.m. to 10:30 p.m. Therefore, the Commonwealth had an evidentiary basis to select 8:30 p.m. to 10:30 p.m. as the assumed timeframe for its hypothetical question.

At bottom, [Blakey] has simply not shown us that the foregoing facts of record were in any way insufficient for the Commonwealth to pose 8:30 p.m. to 10:30 p.m. as a timeframe for Ross's opinion. As such, [Blakey] has not proven arguable merit to his underlying claim that counsel should have objected . . . .

Before leaving this general issue, we also note the following. To whatever extent [Blakey] may also be trying to say that Ross lacked sufficient medical facts of record to support his opinion, [Blakey] is simply wrong. In addition to the significant medical facts introduced during Ross's testimony about the autopsy, the record shows he reviewed the CMC medical records. Based on his review of those records, Ross was aware of the decedent's condition upon admission to CMC and he knew the time of that admission. He went on to explain to the jurors that, given the totality of the medical evidence available to him, he was able to extrapolate backward and arrive at an approximate injury time. There are sufficient record facts supporting Ross's medical opinion.

(Doc. 33-13, at 9–11 (citations omitted)). Based on the record before the

Superior Court, there is nothing to suggest that the Superior Court applied *Strickland* to the facts of this claim in an objectively unreasonable manner, nor is there anything to suggest an unreasonable determination of the facts by the state court. *See Woodford*, 537 U.S. at 25.

Accordingly, it is recommended that the petition be denied on the merits with respect to Blakey's claim (4).

### 2. Prosecutorial Misconduct Claim

In claim (7), Blakey claims that he was denied a fair trial because the prosecution made various improper remarks during closing arguments. The Superior Court considered this prosecutorial misconduct claim on direct appeal and denied it on the merits, finding that, although the prosecutor improperly referenced his own personal beliefs about Blakey's guilt and the conduct of his witnesses and trial counsel, those references did not prejudice Blakey, and thus he was not denied a fair trial based on these remarks. The state court provided the following explanation of its reasoning:

> [O]ur review [of] the record reveals that the prosecutor stated the following in his closing argument: "I believe and I submit to you that I did prove beyond a reasonable doubt that [Blakey] is responsible for the death of the seven-month-old victim." He also stated that Blakey's testimony was "full of lies," and suggested that "innocent

people don't act the way Blakey did, only guilty people do." The prosecutor also stated that the defense engaged in "mud-slinging" of certain witnesses, and used "red herrings" in an attempt to distract the jury.

While we agree with Blakey that the prosecutor's injection of his own personal belief was improper, we fail to see how any portion of the closing argument prejudiced the jury against Blakey.

As a general rule, it is improper for a prosecutor to express her personal belief on the credibility of the witness. A prosecutor may, however, comment on the credibility of witnesses.

Instantly, the above portions of the closing argument were properly advanced to refute the defense's theory that the Commonwealth was attempting to demonize Blakey, and to demonstrate that he fled because he knew that he was being sought by the authorities in connection with the victim's injuries and subsequent death. As such, it comprised a valid attack on his credibility.

Moreover, while the prosecutor improperly stated a personal belief while addressing the jury, *e.g.* "I believe and I submit to you . . .", the comment would have been proper if he had instead stated, "The Commonwealth believes and submits to you . . . ." We cannot find, given the evidence of the brutal attack, that the effect of this fleeting instance of the prosecutor's personal opinion fixed in the jurors' minds a "bias and hostility towards Blakey, thus impeding their ability to weigh[] the evidence objectively and render a true verdict." In addition, the use of phrases such as "mud-slinging" and "red herring" was permissible because the prosecutor was merely utilizing oratorical flair to describe the defense's trial strategy and tactics. Thus, we find that the prosecutor did not engage in misconduct in his closing argument. Accordingly, [this] claim[] lack[s] merit.

(Doc. 33-10, at 17–19 (citations and brackets omitted)).

There is nothing in the record to suggest that adjudication on the merits by the state appellate court resulted in a decision that was based on an unreasonable determination of the facts, nor is there anything to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law. On its face, the state appellate court's rationale is a reasonable application of *Darden v. Wainwright*, 477 U.S. 168 (1986), which provides the controlling standard for evaluating claims alleging that comments by the prosecution at closing argument rendered a conviction fundamentally unfair. Under *Darden*, a reviewing court must consider "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181. For due process to have been violated, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987). As the Superior Court's findings suggest, the prosecutor's closing argument "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." *See Darden*, 477 U.S.

at 181–82. Much of the objectionable content of the prosecutor's comments "was invited by or was responsive to" the defense's theory of the case. *See id.* at 182. And the weight of the evidence against Blakey was heavy. *See id.* Based on the record before the Superior Court, there is nothing to suggest that the Superior Court's decision was contrary to or an objectively unreasonable application of *Darden* to the facts of this claim, nor is there anything to suggest an unreasonable determination of the facts by the state court.

Accordingly, it is recommended that the petition be denied on the merits with respect to Blakey's claim (7).

### 3. Sufficiency of the Evidence Claim

In claim (5), Blakey claims that his conviction for first-degree murder was based on insufficient evidence as a matter of law because the evidence did not establish the timing of the victim's injuries beyond a reasonable doubt, nor did it establish beyond a reasonable doubt that Blakey had exclusive custody of the victim at the time of his fatal injuries.

On direct appeal, the Superior Court considered Blakey's insufficient evidence claim and denied it on the merits. As explained by the Superior Court in its written opinion, Pennsylvania law provides that:

In order to sustain a conviction for first-degree murder, the Commonwealth has the burden of proving beyond a reasonable doubt that:

> 1) a human being was unlawfully killed;
>
> 2) the person accused is responsible for the killing; and
>
> 3) the accused acted with specific intent to kill.

"Specific intent to kill can be proven where the defendant knowingly applies deadly force to the person of another." The requisite deliberation may be found to exist wherever there is a conscious purpose to bring about death. Moreover, the Commonwealth need not establish guilt to a mathematical certainty, and may sustain its burden of proof by means of wholly circumstantial evidence.

(Doc. 33-10, at 6 (citations omitted)).

In denying Blakey's insufficient evidence claim, the Superior Court found that:

> Here, our review of the record reveals that in the early afternoon of June 4, 2007, the victim's mother, Keturah White, went to the hospital with severe stomach pain. Ms. White asked her close friend, Danielle Washington, to pick the victim up from daycare and babysit him in Ms. White's apartment. Ms. Washington picked up the victim and took him to the apartment, where she played with him and fed him. She indicated that "he was acting normal" throughout that time.
>
> Ms. Washington then answered a telephone call and conversed for approximately thirty minutes. When the

conversation began, Ms. Washington was seated on the couch in the living room while holding the victim in her arms. She was holding the victim so that he would fall asleep. During her phone conversation, Blakey arrived at the apartment and entered the bedroom to charge his cell phone.

Once the victim had fallen asleep, Ms. Washington entered the bedroom and laid the victim down on the bed, next to where Blakey was lying down and talking on his phone. The victim awoke and began to cry twice thereafter, and each time Ms. Washington went into the bedroom and carried the victim back to the living room until he fell asleep again. After the victim had fallen back asleep for the third time, Ms. Washington ended her telephone conversation and entered the bedroom to return the victim to the bed. As soon as she put him down on the bed next to Blakey, the victim awoke and began to cry again. However, this time Blakey directed her to leave the victim on the bed with him, saying, "It's okay, I got him. It's okay."

Ms. Washington then returned to the living room and immediately placed a phone call to her boyfriend. The telephone records indicate that the call was placed at 9:06 p.m. At the beginning of Ms. Washington's telephone conversation, she heard sounds of the victim's crying coming from the bedroom. The victim's crying then "became muffled as if the victim was moving around." Toward the middle of her conversation, the victim's crying ceased. At some point before 10:26 p.m., Blakey exited the bedroom and left the apartment while Ms. Washington was still conversing on the telephone.

Ms. Washington's telephone conversation ended at 10:45 p.m., well after Blakey had left the apartment. It was only after Ms. Washington got off the telephone that she entered the bedroom to check on the victim, and discovered that he was breathing irregularly and

appeared to be limp and lifeless.

Subsequent medical examination revealed that the victim's fatal head injuries were inflicted between 8:30 p.m. and 10:30 p.m. on June 4, 2007, and the manner of death was homicide. That opinion was based upon the autopsy findings combined with Ms. Washington's testimony concerning the various time periods when the victim was heard crying.

Based on the foregoing evidence, it was established [that] Blakey was the only person in the bedroom with the victim from the moment Ms. Washington went to the living room and placed the telephone call at 9:06 p.m., up until he left the apartment. The telephone records were critical with respect to narrowing the time frame within which the fatal injuries were inflicted upon the victim. Blakey's cell phone records indicated that he left the apartment a short time prior to 10:26 p.m., which was when Ms. White called to inquire about his whereabouts, and he replied that he was en route to the hospital. Thus, the evidence establishes that Blakey had continuous, sole custody over the victim in the bedroom between 9:06 p.m., and sometime before 10:26 p.m.

(*Id.* at 6–9 (citations and brackets omitted)).

The Superior Court analyzed these facts, ultimately concluding that Blakey's conviction was supported by sufficient evidence. The state appellate court explained its reasoning:

[W]e find that the evidence was sufficient to sustain the murder conviction under the exclusive custody doctrine. As noted, the evidence established that Blakey was alone in the bedroom with the victim between 9:06 p.m. and the time he left the apartment, which was sometime before 10:26 p.m. This leaves a window of

approximately one hour when Blakey had sole custody over the victim. The medical testimony revealed that the fatal blows were inflicted at some time within this period.

Additionally, Ms. Washington testified that she heard the victim crying while she was talking on the telephone in the living room, but then heard sounds as if the victim was moving around, after which the crying ceased. She did not discover that the victim was badly harmed until after Blakey had already left the apartment. . . . [T]his evidence was sufficient to establish that Blakey was responsible for killing the victim while he was alone with him in the bedroom. Likewise, an inference of callous disregard for human life is clearly warranted under such facts—Blakey smashed the seven-month-old victim's head against a concrete floor multiple times. Thus, we find that the evidence presented by the Commonwealth was sufficient to sustain the murder conviction. Accordingly, this claim lacks merit.

(*Id.* at 11–12).

There is nothing in the record to suggest that adjudication on the merits by the state appellate court resulted in a decision that was based on an unreasonable determination of the facts, nor is there anything to suggest that adjudication on the merits by the state court was contrary to, or an unreasonable application of, clearly established federal law. On its face, the state appellate court's rationale is a reasonable application of *Jackson v. Virginia*, 443 U.S. 307 (1979), which provides the controlling standard for evaluating insufficient evidence claims. *See id.* at 319

(holding that, on federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original). As the Supreme Court of the United States has observed,

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam). Because the record before the state appellate court contained sufficient evidence for a reasonable factfinder to find the essential elements of first-degree murder as against Blakey, his claim that his conviction was based on insufficient evidence is meritless.

Accordingly, it is recommended that the petition be denied on the merits with respect to Blakey's claim (5).

## III.   RECOMMENDATION

Based on the foregoing, it is recommended that the amended petition (Doc. 18) be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that the Court decline to issue a certificate of appealability, as the petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).


Dated: June 20, 2016                    *s/ Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL BLAKEY,

     Petitioner,

     v.

MICHAEL WENEROWICZ,

     Respondent.

CIVIL ACTION NO. 3:13-cv-00575

(CAPUTO, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated June 20, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: June 20, 2016                    ***s/ Joseph F. Saporito, Jr.***
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge